# CHARLESTON.

## STATE *v.* KOHNE.

### Decided December 1, 1900.

1. HOMICIDE—*Evidence—Character.*

   Statements made by a prisoner showing malevolence towards the father and family of the deceased, who was killed while attempting to assist his father in preventing an unlawful trespass of the prisoner on the lands occupied by them, are admissible to establish the maliciousness of the prisoner's conduct. (p. 336).

2. EVIDENCE—*Carrying Revolver—Right.*

   Evidence tending to show that the prisoner had the legal right to carry a revolver ten months before the killing is not admissible to establish such right at the time of the killing. (p. 337).

3. VERDICT—*Cumulative Evidence.*
    Evidence merely cumulative and contradictory, but insufficient to change the result, will not justify the court in setting aside the verdict of a jury.  (p. 337).

4. PUNISHMENT FOR LIFE—*Severity of.*
    Confinement in the penitentiary for life is not too severe a punishment for a person who unlawfully, knowingly, and willfully invades another's premises armed, and then shoots the owner, who attempts in a lawful manner to remove nim therefrom.  (p. 338).

Error to Circuit Court, Hardy County.

Lemuel Kohne was convicted of murder in the first degree, and brings error.

*Affirmed.*

J. N. McMULLAN, for plaintiff in error.

EDGAR P. RUCKER, ATTY. GEN., and G. W. McCAULEY, for the State.

DENT, JUDGE:

Lemuel Kohne, convicted of murder in the first degree by the circuit court of Hardy County and sentenced to life imprisonment, obtained a writ of error to this Court, and assigns five separate grounds for the reversal of the judgment against him.

First, the admission of improper evidence. The evidence objected to is the statements made by the prisoner after the killing in the presence of Muck Strawderman and Camden Strawderman and in the language of Muck Strawderman was as follows: "He (the prisoner) expected to go to the pen, that he would not have cared to go to the penitentiary for twelve or fifteen years if he had gotten the old man Allman. That his revolver was good, but it didn't bring them down as he thought it ought to, that he thought the boy ought not to have been killed, but they got hold of him and he had to shoot." This is an admission on the part of the prisoner which is certainly admissible, as it tends to show the animus with which he did the shooting. If he maliciously intended to kill the father and not the son, the malice towards the father fastens to his guilt in killing the son. 2 Cooley's Blackstone, Book IV, 197 to 200. For the same reason his prior wicked, malevolent conduct towards the Sager

family of which the deceased was a member is competent evidence to show malice towards both father and son.

Second. The exclusion of proper evidence. The evidence excluded was the testimony of J. M. Wood, a justice, to the effect that the fall before the kiling, some eight or ten months prior thereto, the prisoner had been arraigned before him for carrying a revolver, and he had discharged him on the plea that he was justified in carrying the same to protect himself from unlawful attacks threatened by certain persons of the name of Whitmer. This surely was not proper evidence in a case of this character, but was entirely too remote. The question at issue was as to what he was carrying the revolver for at the time of the shooting, and not nearly a year prior thereto.

Third. The court erred in giving the following instruction: "Where there is a quarrel between two persons and both are in fault, and a combat as a result of such quarrel takes place, and death ensues, in order to reduce the offense to killing in self defense two things must appear from the evidence and circumstances in the case—first, that before the mortal blow was given the prisoner declined further combat, and retreated as far as he could with safety; secondly, that he necessarily killed the deceased in order to preserve his own life or to protect himself from great bodily harm."

The objection urged against this instruction is that it "clearly misled the jury and caused them to conclude that if the plea of self defense was not sustained, they had nothing to do but find the prisoner guilty of murder in the first degree." This is not even plausible. If the prisoner had any such fear of this instruction, he could have easily overcome it by instructions asked in his own behalf.

Fourth. The refusal to set aside the verdict upon the ground of after discovered evidence. This evidence is that of Isaac F. Kohne, Simon D. Kohne and Lewis Delinger contradictory to the evidence of Wheeler Delawder, one of the principal witnesses for the State, and is to the effect that the statements of this witness at the trial were materially variant from his statements elsewhere, and that at the time of the shooting the prisoner was in the hands of John Sager crying for help. This evidence is wholly insufficient to justify this Court in reversing the judgment. It would certainly not change the result.

*State* v. *Lane,* 44 W. Va. 730; *Sisler* v. *Shaffer,* 43 *Id.* 769; *Carder* v. *Bank,* 34 *Id.* 38; *Hall* v. *Lyons,* 29 *Id.* 410; *Sayre* v. *King,* 17 *Id.* 562; *State* v. *Williams,* 14 *Id.* 851; *State* v. *Betsall,* 11 *Id.* 703.

Fifth. That the verdict is contrary to the law and evidence. The evidence fully establishes the fact that the prisoner was for some reason filled with malice towards the Sager family and endeavored in every way possible to annoy them. Living on the neighboring place known as the Garrett place, he pulled down the line fence and watched with a gun to shoot their stock if it trespassed on him. He pounded up a pane of glass and put it in a cake for their hogs. He insulted the wife and daughter and annoyed them by acting crazy and interfering with their chickens and schemed in various ways to give them trouble. All of which he says he did to induce them to make up with him. He wanted to be recognized through his power to do evil and make their lives miserable. They notified him to stay off of their premises. This he wholly disregarded. Secretly armed, he unlawfully invaded their farm, and when they tried to expel him therefrom as they lawfully might do, he shoots the son and afterwards only expresses his regret that it was not the father. Unless he is demented, he should be satisfied that he has escaped the gallows and is afforded an opportunity of making some amends for his wicked life. It is written, "Ye shall take no satisfaction for the life of a murderer who is guilty of death, but he shall surely be put to death, for the land cannot be cleansed of the blood that is shed therein, but by the blood of him that shed it." Lifetime confinement in the penitentiary is possibly equivalent to death. It certainly removes the murderer from association with his fellowmen and places him where the all-seeing eye of his offended creator may either drive him to moral suicide or repentance of his iniquitous life. May the latter be the result.

The judgment is affirmed.

*Affirmed.*