For the reasons here stated, we affirm the decree.

*Affirmed.*

---

# CHARLESTON

## STATE v. HIGHLAND.

Submitted September 11, 1912.   Decided October 15, 1912.

1.  HOMICIDE—*Disinterment of Body of Deceased—Discretion of Court—Review.*

    If a court, in a murder prosecution, has power to order the body of the deceased to be disinterred for examination for evidential purposes, it is only when to do so is plainly necessary

and essential to the justice and fairness of trial, and is a matter in the discretion of the court, and its refusal to make such order is, as a rule, not reviewable as cause for reversal. (p. 91).

2. DISINTERMENT OF DEAD BODY FOR EVIDENCE.

Has a court, in a prosecution for murder, power to order the body of the deceased to be taken from its grave for examination for the purpose of evidence on the trial? (p. 88).

Error to Circuit Court, Randolph County.

Homer Highland was convicted of voluntary manslaughter, and brings error.

*Affirmed.*

*Talbott & Hoover* and *C. H. Scott,* for plaintiff in error.

*William G. Conley,* Attorney General, for the State.

BRANNON, PRESIDENT.

Homer Highland was convicted of voluntary manslaughter upon an indictment in the circuit court of Randolph county charging him with the murder of James F. Herron. He was upon a first trial found by a jury guilty of murder in the first degree with recommendation that he be punished by confinement in the penitentiary. A new trial was granted him. When the case was called for a second trial he moved the court for an autopsy of Herron's body, and asked that the court order the body to be disinterred that such autopsy might be had; but the court refused to make such order.

We have presented to us for the first time the question whether a court can, on a murder trial, at the motion of an accused, order the dead body of the victim of the crime to be exhumed for examination for evidence purposes. Can it without the consent of the kindred of the dead invade the sacred precincts of the cemetery, and tear open the grave, and tear open again and lacerate afresh the hearts of those that loved him, and to whom his memory is sacred and dear? With what reverence do we all regard the graves of our dead, and each returning spring cover them with beautiful flowers. There is an instinct planted by nature in the human breast to feel a strong aversion—almost horror—at the desecration of the grave. The maxim *Requiescat in pace,* (Let him rest in peace) speaks this

feeling.    The great dramatist impressively tells this tender
emotion in the prayerful epitaph written by his own hand for
his tombstone.

> "Good friend, for Jesus' sake forbear
> To dig the dust enclosed here;
> Blest be the man that spares these stones,
> And cursed be he that moves my bones."

It is said that the conquering Moslem respected the graves of
Abraham, Isaac and Jacob, and Sarah, Rebekah and Leah, their
wives, by abstaining from the removal of their bodies from
Macpelah, when building a mosque.  Genesis 49 : 31.   Diogenes
and his disciples regarded burial with contempt and held it un-
important whether bodies should be burned by fire or devoured
by beasts, birds or worms; and some modern French philoso-
phers descanted upon the "glorious nothingness" of the grave
and that "nameless thing," a dead body; but the human heart
and the secular jurisprudence of the civilized nations in our day
regard the grave and its body in much higher esteem.   It was a
misdemeanor at common law to disinter a dead body.   Our
Code enforces this sentiment by punishment in the penitentiary
of one unlawfully disinterring a dead body.

For some purposes the law respects and enforces the right of
next of kin as to a dead body.   So much that even a surviving
wife or husband cannot remove a body, after it is once buried,
against their will.   *Wynkoop v. Wynkoop,* 82 Am. Dec. 506;
*Peters v. Peters,* 42 N. J. Eq. 140; *In re Richardson,* 60 N. Y.
S. 538.   The common law says that there can be no property in
a dead body.   2 Blackstone 429; 3 A. & E. Ann. Cases, 129.
Though the minister at the grave says "Dust to dust, ashes to
ashes," thus seeming to make the remains a part of the soil,
Blackstone there says that though the heir has property in the
monuments of his ancestors, "yet he has none in their bodies or
ashes," and cannot sue one for disturbing the remains.   I would
question this at this day.   I think he could bring trespass or
injunction.

Even now we cannot say that the heir or next of kin has
strictly property in the remains, but they have property in a
sense, such as will give them in law right of burial, protecting
the graves and the like.   They can prevent unlawful removal.

As will appear in the full discussion of rights of kindred in 3
A. &. E. Ann. cases, 128 and full note p. 132. The notable case
of *Pierce* v. *Proprietors of Swan Point Cemetery,* 14 Am. R.
667, holds that "While a dead body is not property in the strict
sense of the common law, it is *quasi* property, over which the
relatives of the deceased have rights which the courts will pro-
tect." I find much law to that effect. In view of such right in
relatives I doubted the right of a court to invade the grave in a
criminal prosecution to which the relatives were not parties.
And I find a federal circuit court holding that a court has no
power to order the exhumation of a dead body in an action at
law to which the widow, who has a right to control the body,
is not a party, but that a court of equity may, she being a party.
*Mutual Life Ins. Co.* v. *Griesa,* 156 Fed. R. 398. If we follow
our mere sentiment or emotion, we would deny even a court
this power. But there is the call of justice, and the principle
that a court can take those steps essential to administer justice,
as an organ of the government. Let us see further as to this
power. Note that the Code of 1906, ch. 149, sec. 13, makes it a
felony to *"unlawfully disinter"* a dead human body. Surely a
coroner had power to disinter to hold an inquest. 2 Hale, Pleas
of Crown, 58. His inquest must be *super visum corporis,* (on
view of the body) and this calls for exhumation. 2 Hale 66;
2 Hawkins, Pleas of Crown, sec. 23; 5 Ency. Pl. & Pr. 46.
Some authorities hold that the court has such power of disin-
terment for evidentiary purposes. *Grangers Life Ins. Co.* v.
*Brown,* 34 Am. R. 446; 14 A. & E. Ann. Cases, 471; *Cohen* v.
*Congregation,* 114 App. Div. 117. In *Moss* v. *State,* 152 Ala.
30, the court said that if it had the power to exhume, the matter
was in the discretion of the court and its refusal not reviewable.
It is laid down in 5 Ency. Pl. & Pr. 46, and note, that a second
inquest is a matter of discretion according to the circumstance
and length of time since burial. In 82 Am. Dec., p. 514, it is
laid down that when the body has been buried, no one has a
right to remove it without the consent of the owner of the
grave, or leave of the proper ecclesiastical, municipal or judicial
authority. In *Gray* v. *State,* 55 Texas Crim. R. p. 90, a murder
trial, it is held that neither the right of sepulture nor the right
to have the body remain untouched and unmolested is an abso-

lute right, but these rights must yield when they conflict with the public good or where the demand of justice requires such subordination. The court said that the trial court in proper cases of imperative necessity has inherent power to order disinterment of a body in trials for murder to ascertain the truth respecting the homicide, in due administration of justice, at the instance of either the state or of the prisoner. The court said: "The power inheres in such court or there is, in such a case as here presented, no such authority anywhere. It would, of course, be conceded that such a request ought not to be granted either on application of the State or the defendant, lightly or inconsiderately; nor in any case unless such course was absolutely essential to the administration of justice. Every consideration of respect for the dead and a proper sense of regard for the court's authority and dignity would suggest that the pathetic dust of the deceased should remain undisturbed until called before the great Judge at the Final Assize unless justice required a disinterment." The authorities on the subject say that the disinterment must be absolutely essential to justice. 14 A. & E. Ann. Cases 470. And in *Granger Life Ins. Co.*, 34 Am. R. 466, delay in the motion denied the application.

We do not decide whether a court has this power or not. Under the circumstances of this case we do not think that the court erred in refusing the autopsy. On the first trial no application for it was made. The application was made nine months after burial. Then it must have been that the brain had largely decomposed so as to render it uncertain whether there could be gained from its examination any valuable evidence. The State gave evidence that when Highland and Herron met a violent altercation ensued; that Highland struck Herron with a stone causing a wound in the back of his head which fractured the skull and felled Herron nearly to the ground. The defendant claims that after this blow Herron was able to fight and did actively fight and attack him with stones and knife, justifying self defense, and that the skull was not fractured so as to disable him. There was an inquest at which a physician was present and examined the body, as well as others. We cannot see that it is likely that an autopsy would make any more decisive revelation, and the law above cited tells us that before we

can say a trial court erred herein it must be clear that a second inquest is absolutely essential to justice. It should be rarely resorted to, if it be within the power of a court. It may be of use to refer to some other authorities bearing upon the subject of dead bodies, their burial and rights of kindred. *Keyes* v. *Konkel,* 75 Am. St. R. 423 and note; *Pulsifer* v. *Douglass,* 53 L. R. A. 238; Am. Digest, Dec. ed., Vol. 7, title "Dead Bodies," sec. 5; *Weld* v. *Walker,* 39 Am. R. 465. Even if the power rested in the trial court, considering the length of time since burial, and the uncertainty as to what disclosure the decomposing body would make, we cannot say that autopsy was imperatively necessary, or that the discretion lodged in the court was abused.

The accused complains that the state gave evidence that on Sunday morning there was a quarrel between Herron and Highland at Herron's house. This was early in the morning and the killing was at another place and on another occasion about three or four o'clock in the afternoon of the same day. In that quarrel hard language was used by Highland, and while it went on Highland ordered Herron away, and Highland went into his house for a gun and pointed it at Herron, when Herron fled. We think this evidence is plainly admissable to show grudge and malice. *State* v. *Kone,* 48 W. Va. 335.

As to error alleged in the instructions, we have found no error therein, and as they present no important debatable questions of law we do not occupy space for their presentation or discussion; nor will we discuss the evidence, which was flatly conflicting. The verdict must here be final on that question. *State* v. *Hill,* 52 W. Va. 296, 304. Therefore, we affirm the judgment.

*Affirmed.*