# CHARLESTON.

ENGLAND v. CENTRAL POCAHONTAS COAL CO.
and
BISHOP v. CENTRAL POCAHONTAS COAL CO.

Submitted September 1, 1920.    Decided September 7, 1920.

1. DEAD BODIES—*Violation of Right of Burial May be Redressed by Near Relatives in Action on the Case; "Property."*

   While strictly considered there is no right of property in a dead body, nevertheless the right to bury a corpse and preserve the remains is a legal right, which in this country is regarded as a quasi right in property, the violation of which is cognizable in and may be redressed at the suit of near relatives by an action on the case against the wrongdoer.  (p. 577).

2. SAME—*Right of Burial May be Protected by Action in Trespass or by Injunction.*

   Whether such right of burial exists by deed or by mere license, so long as it exists and is not lawfully revoked or destroyed, it may be so redressed and protected in our courts by trespass or injunction.  (p. 578).

3. SAME—*Actual Possession Not Prerequisite of Trespass on Case Against Violator of Sepulcher.*

   Such actions, while in the nature of quare clausum fregit, are not strictly so, and title and actual possession are not prerequisites to the maintenance of trespass on the case for damages against the intruder and violator of sepulcher.  (p. 578).

4. SAME—*Declaration in Action for Violation of Right of Sepulcher Held Not Bad for Uncertainty.*

   The declaration in this case describing the burial ground or cemetery as located in McDowell County, one hundred yards from the mouth of Upper Shannon Branch, a tributary of

Tug River, and thirty or forty yards back from the bank of said branch, and a part of a tract of land owned in 1880 by Thomas M. Lester, is sufficiently certain for identification and is not bad for uncertainty of description; (p. 579).

(WILLIAMS, PRESIDENT, absent.)

Cases certified from the Circuit Court, McDowell County.

Actions by Joseph England and another and by Mary Bishop and another against the Central Pocahontas Coal Company. Demurrers to declarations overruled, and questions certified.

*Affirmed,*

*Sanders & Crockett,* and *Joseph M. Crockett,* for plaintiffs. *Anderson, Strother, Hughes & Curd,* for defendant.

MILLER, JUDGE:

In responding to the questions certified we are called upon to say whether the declarations, as the circuit court determined they were, are good upon demurrer.

Both declarations are substantially alike except as to the persons of the plaintiffs and the names of their deceased relatives for the invasion and desecration of whose graves these actions were brought. It is averred in each case that many years prior to 1880 there was set apart and dedicated as a burying ground or cemetery a lot or parcel of land in McDowell County, about one hundred yards from the mouth of Upper Shannon Branch, a tributary of Tug River, and lying thirty or forty yards from the bank of said branch, which said lot was embraced in and was a part of a tract then owned by Thomas M. Lester, now deceased; that after said lot was so set apart, dedicated and consecrated as a burying ground or cemetery, there was buried therein the remains of Sallie England, the mother of the plaintiffs in the first of said actions; and in the second it is averred that the remains of Mastin C. Bishop, the son of the plaintiffs, was interred therein. And both declarations aver that on or about October 1, 1919, said defendant, by and through its agents and employees, without the knowledge and consent of plaintiffs, and without any leave, authority or right whatsoever for so doing, wilfully, wantonly, unlawfully and without regard for the rights and feelings of plaintiffs entered in and upon said ceme-

tery and then and there disinterred the bodies of the respective relatives of plaintiffs, and wilfully, wantonly, unlawfully and without regard for their rights and feelings caused the caskets holding said bodies to be broken and pulled apart, and the bodies there to be exposed to public gaze; and that thereafter, by and through its said agents and employees, defendant caused said bodies so disinterred to be carried back into the mountains and there buried at a point unknown to plaintiffs, by reason whereof they were made to suffer great anguish, mortification, humiliation, insult and injury, wherefore the respective suits, and whereby they sustained damages respectively in the sum of ten thousand dollars.

The first proposition relied on to reverse the ruling below is that neither the common law nor any statute gives the next of kin or other relatives right of action against one who disturbs or disinters a dead body. Our statute, section 13, chapter 149, Code 1918, makes it unlawful for any person to disinter or displace a dead human body, or any part of a dead human body, which shall have been deposited in any vault or other burial place, and punishes the offense as a felony. Section 7 of chapter 103 says that any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of such violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages. However, in Virginia it was held that this statute was merely enacted to preserve existing causes of action and to prevent defendant from setting up the payment of the statutory penalty in bar thereof. *Hortenstein* v. *Virginia-Carolina Ry. Co.,* 102 Va. 914. It is conceded that at the common law there was no right of property in a dead body, and that once interred it became a part of the soil where laid; and in England the protection of sepulcher was generally controlled by the Ecclesiastical law. 2 Blackstone, 428; *Meagher* v. *Driscoll,* 99 Mass. 281, 96 Amer. Dec. 759. In this country we have no Ecclesiastical law controlling the subject. The right however to bury a corpse and to preserve the remains is a legal right which the courts of this country recognize and protect; and this right is regarded as a quasi right of property. 17 Corpus Jurs, p. 1139; 8 Ruling

Case Law, p. 684; *State* v. *Highland,* 71 W. Va. 87. And the right, according to the authorities in this country, exists in near relatives, and is cognizable in courts of law as well as in equity, and so long as the right of interment exists it may be vindicated by them in such courts.

But it is said that as at the common law trespass on the case would not lie for disturbing a dead body, no such action will lie at the suit of a relative for damages; that trespass quare clausum is the only action which can be maintained for disturbing a dead body, and by him only who has some right or title to the soil where interred. Citing *Meagher* v. *Driscoll, supra,* and 6 Cyc. 721 . There is no doubt that such action would lie to the owner of the soil, or by trustees or owners of cemeteries, but in this country right of action in the nature of quare clausum is recognized as existing in near relatives for disturbing or disinterring the body of a deceased person. The declarations aver the dedication of the burial lot and lawful interment there of the bodies of the deceased persons. Whether this right of burial exists by deed or by mere license granted by the owner of the soil, so long as the right exists and is not revoked, it may be vindicated in the courts. In *Kincaid's Appeal,* 16 P. F. Smith, 420, 5 Amer. Rep. 377, cited in *Craig* v. *First Presbyterian Church of Pittsburgh,* 88 Pa. St. 42, 32 Amer. Rep. 417, 422, Judge Sharswood said: "While the license continued, he could probably bring trespass or case for any invasion or disturbance of it, whether by the grantors or by strangers." And in *State* v. *Highland, supra,* Judge BRANNON, speaking of such right of action, says: "I think he can either bring trespass or injunction." In *Page* v. *Symonds,* 63 N. H. 17, 56 Amer. Rep. 481, the court says on this subject of right of property in a dead body and the right of near relatives therein: "But while it is not property in the ordinary sense of the term, it is regarded as property so far as to entitle the relative to legal protection from unnecessary disturbance and wanton violation or invasion of its place of burial. The plaintiff, notwithstanding he is neither the owner of the soil of the cemetery nor of the remains of his deceased relatives interred there, may nevertheless be authorized to invoke protection against unnecessary desecration of their place of burial." Citing *Meagher* v. *Driscoll, supra,* and

other cases, and Cooley on Torts, 539. It will be noticed that the declarations in these cases charge that the acts of defendant were wilfull, wanton and unlawful, and done in disregard of plaintiff's rights, and without knowledge or notice to them whereby their rights might have been terminated if existing by mere license from the owner or if done in some manner provided by law. See *Bessemer Land & Imp. Co.*, (Ala.), 56 Amer. St. Rep. 26, and note p. 37. We think it clear from these authorities that plaintiffs have the right to bring this form of action. Our statute, section 8, chapter 103, says that in any case in which an action of trespass will lie, there may be maintained an action of trespass on the case.

As a further ground of demurrer it is urged however that as the action is in the nature of quare clausum fregit, the statute does not relieve the pleader from averring all material facts necessary to be alleged and proven in an action of trespass, and that here it was necessary to have alleged possession and the entry and breaking of plaintiff's close. It is not contended that actual possession was necessary, but that constructive possession would do under the American authorities. The authorities above cited, however, regard actions of this character as in the nature of quare clausum, not strictly so, and say that title and actual possession are not necessarily involved in the right sought to be protected. The character of title or license under which the right of burial is exercised is immaterial so long as it exists, and can not be invaded with impunity.

Lastly, it is urged in support of the demurrer that the declarations contain no description of the property sufficient to identify it on the ground. We think there is no merit in this point. The burial ground or cemetery is described as located in McDowell County, one hundred yards from the mouth of Upper Shannon Branch, a tributary of Tug River, and thirty or forty yards back from the bank of said branch, and a part of a tract of land owned in 1880 by Thomas M. Lester. Certainly the graves of plaintiffs' decedents located in such a cemetery could be easily identified. In the case of *McDodrill v. Pardee & Curtin Lumber Co.*, 40 W. Va. 564, cited and relied on by demurrants, the tract of land alleged to have been entered upon was described as a tract of three hundred and forty-four

acres, more or less, situated on Elk River in Randolph County, West Virginia. This description of the locus in quo was justly regarded insufficient, as one of the traversable facts in such an action. But the court said in that case: "It is not called the close of anyone, or designated as in the occupation of anyone, or given any name or designation, nor metes or bounds of any kind, in whole or in part." Judge HOLT in that connection says: "Any one or all of these modes of designation would have sufficed." Certainly, a cemetery lot with the description given of it in the declarations in these cases, if existing as alleged, could be easily located on the ground. Generally, a cemetary lot in the country is a notable object and has well defined boundaries, and is easily identified. We think the description sufficient and clearly within the rule of the cases cited against it. ·

Our conclusion is to affirm the rulings of the circuit court, and this conclusion will be certified back to the court below.

*Affirmed.*