# CHARLESTON.

## Alvernon Sherrard v. Nora Henry.

Submitted March 15, 1921. Decided March 22, 1921.

1. Dead Bodies—*Equity May Restrain Removal When Rightfully Buried.*

    ·Equity has jurisdiction to restrain the removal of or interference with the remains of the dead rightfully buried in a cemetery. (p. 319).

2. Adverse Possession—*Those Using Land for Cemetery Purposes With Owners Consent May Acquire Title By Adverse Possession.*

    Where a parcel of land has been set apart by the owner thereof as a place for the burial of the dead those who, with the consent and acquiesence of such owner, use the same for the purpose for which it has been dedicated, selecting and appropriating plots or squares for the burial of their dead therein free of charge, may acquire a right to such plots or squares so appropriated by adverse possession. (p. 319).

3. Same—Cemeteries—*Adverse Possession May Confer Right of Perpetual Easement in Cemetery Lot; Equity Will Protect Such Rights.*

    While the right which one acquires in a cemetery lot is rather in the nature of a perpetual easement subject ·to be controlled by the state in the exercise of its police power, it is such a valuable right as a court of equity will protect, and the same character of adverse possession that w,ill confer title to real estate will suffice to confer such right. (p. 319).

4. Same—*Sufficiency of Boundaries of Burial Lot for the Purposes of Adverse Possession Stated.*

    It is not necessary in order to the acquirement of a right in a burial lot by adverse posession that the same be fenced. If the limits of such claim are clearly defined by improvements upon the lot and by a slight barrier or ridge extending all the way around the same, and so maintained for the period of ten years, clearly indicating the extent and nature of the claim, it will be sufficient to confer the right by adverse possession. (p. 320).

5. Cemeteries—*One Who Buries a Body on Another's Burial Lot May Be Requierd to Remove it.*

    One who buries the body of his dead relative upon a burial

lot which another has the exclusive right to use for such purpose will be required by mandatory injunction to disinter and remove the same. (p. 321).

Appeal from Circuit Court, Morgan County.

Suit by Alvernon Sherrard against Nora Henry for an injunction, with cross-bill by defendant. Decree for complainant, and defendant appeals.

*Reversed and rendered.*

*A. C. McIntyre,* and *G. McIntire-Weaver,* for appellant.
*Allen B. Noll* and *Lutrell & Rogers,* for appellee.

Ritz, President:

Plaintiff brought this suit for the purpose of enjoining the defendant from removing the body of her uncle from a burial plot in a cemetery in Oakland, in Morgan county. From a decree perpetuating the injunction and refusing the defendand the relief prayed for in her cross bill answer, the defendant prosecutes this appeal.

It appears that many years ago there was conveyed to certain trustees for the Methodist Church a tract of land for religious purposes. Upon a part of this land was erected a church building in which has been conducted religious services, and another part of the land was set apart as a burial ground. It appears that this part was enclosed by a fence. No charge was made for lots in this cemetery, it being the uniform and unbroken custom since it was set apart and dedicated for burial purposes for those desiring to bury their dead therein to select a lot for that purpose, and to indicate such selection by marking such lot, and by cleaning it up and keeping it in presentable condition. Both parties to this suit agree as to this phase of the case, and both of them claim the right to the lot in which plaintiff's uncle was buried, by reason of the same having been pre-empted in the manner above indicated. The plaintiff contends that her grandfather, Dr. B. E. Shockey, selected a row, as she calls it, in this cemetery for the burial of members of his family and their close relatives, and that this row includes the lot wherein her uncle was buried. The defendant, on the other

hand, contends that she, in the year 1893, selected a square in this cemetery for the burial of her dead relatives, and marked the same off in accordance with custom, and that the lot in which plaintiff's uncle is buried is within her square, wherefore she claims the right to compel the removal of this body and its re-interment elsewhere, and in her answer she prays that she be given this relief against the plaintiff, and against the plaintiff's father, John W. Sherrard.

The rights of the respective parties to this controversy depend largely upon the fact as to which of their burial lots include the ground in which the body of plaintiff's uncle was interred.    The proof is full, in fact is uncontradicted, that this piece of land was set apart for burial purposes many, many years ago, and has been dedicated to that use ever since.    The proof is just as satisfactory that the method of selection of a burial lot in this cemetery was, by the party desiring such lot, going upon the ground and marking it in some way, and improving and keeping it in presentable condition, as well as by burial of bodies of dead relatives therein and marking the graves.    That the plaintiff's ancestor did select a row or square many years ago for this purpose is likewise not disputed, but it is the boundaries of this square, or the limits of it, which make the controversy here.    The plaintiff's father is the principal witness upon the acts of ownership exercised by Doctor Shockey and his successors over this plot of ground.    He testifies that for many, many years he worked and took care of the lot appropriated by Dr. Shockey, and that it included the space in which his brother's body was buried.    Other witnesses testify that he did on many occasions clean up and work the plaintiff's plot, but not one of them have any information that he ever did anything upon that part thereof in which the body of plaintiff's uncle was interred, nor is there any evidence upon the ground defining the limits of the plaintiff's lot at that end of the plot so far as the testimony indicates. On behalf of the defendant it is shown that in the year 1893 she selected a square in this cemetery, and that at that time she made a slight ridge all the way around this square indicating that it had been appropriated; that in this square at that time she buried the

body of her father, and that since that time she has had interred in this square the body of her mother, of her father-in-law, her mother-in-law, her sister, and one of her grandchildren, and that she has space reserved therein sufficient for the burial of her own body and the body of her husband. That this square so marked out by the defendant includes the space in which the body of plaintiff's uncle is buried is undisputed.   The evidence is overwhelming that the defendant since 1893 from time to time worked upon this square.   She has removed the brush and sprouts therefrom, and kept it planted in flowers, and sowed in grass; has provided suitable headstones at the graves of her deceased relatives buried therein, and has kept up the slight ridge around the edges thereof indicating the limits of her lot.   That the father of the plaintiff buried his brother within the limits of this lot, there is no question, but his contention, and the contention of the plaintiff, is that Doctor Shockey had acquired this lot prior to the time it had been appropriated by the defendant in 1893.   It is clear that in 1893 there was nothing to indicate an intention upon the part of Doctor Shockey or his relatives that their lot should extend to and cover this ground, and it is just as clear that since 1893, when the plaintiff selected the lot, she has indicated by unmistakable marks upon the ground the intention to appropriate the same for burial purposes.   Whether this lot was included within the original lot as intended to be appropriated by Doctor Shockey in the beginning can make little difference.   There was nothing upon the ground. in 1893 to indicate that his row extended in the direction of the defendant's lot beyond the last grave therein.   This ground was unappropriated at that time by any person, and under an unbroken custom any person desiring to provide a place for the burial of his dead in this cemetery had a right to appropriate any ground not theretofore marked out and appropriated by someone else for that purpose.   It is shown by the evidence and is not disputed that when the plaintiff's father went to the cemetery and indicated the place that he desired the grave dug for the burial of his brother's body, he was told that that was within the defendant's lot, and that he insisted, notwith-

standing this information, that the grave  be dug at that
point.  · He states in his testimony that had the defendant
come to him and advised him that she claimed this lot he
would have surrendered any claim to it, and buried his
brother elsewhere, but that he is now unwilling to remove the
remains.    This testimony is not at all consistent with  his
act in burying his brother in this lot after being fully in-
formed of the defendant's claim thereto and without making
any further inquiry  'or investigation as to defendant's
rights.    In addition to this the insincerity of his statement
is demonstrated by the· fact that immediately upon the dis-
covery by the defendant that this body was buried in her lot
she called upon plaintiff's father to have the same removed,
and informed him that the lot was hers, and she proposed to
pay one-half of the expense of the removal of the body, and
when this proposition was declined she proposed that she
would pay the entire expense of removing it, which proposi-
tion was also declined.   She then called upon the trustees
who held the legal title to the property and asked them to
require the plaintiff and her father to remove the body of the
plaintiff's uncle from her lot, and the trustees being ad-
vised in the premises notified plaintiff's father to remove the
body within thirty days, failing  in which the defendant
would have the same removed.    Before the expiration of this
time this injunction was procured.

The defendant challenges the jurisdiction of a court of
equity to maintain this bill, insisting that there is an ade-
quate remedy at law for the protection of any rights which
the plaintiff may have.    This claim is based upon the theory
that the plaintiff is not in possession of the lot, and is, there-
fore, not entitled to go into  equity to protect any rights
she may have therein.    That a court of equity will interfere
to prevent desecration of places of burial of the dead, or to
prevent the removal of bodies properly buried, is well es-
tablished.  There is no property in a dead body, and this
being true the law can afford no remedy· in a case where
the removal of such a body is sought or attempted.    The
courts do, however, recognize that while there is no property
in the body, the close relatives have a right to protect the

same, and to prevent its removal, or the desecration of the
grave.     This being true, there is no other remedy except
resort to a court of equity when the removal of a dead body
is attempted or threatened, and then such relief is granted
as the circumstances require, and as is in consonance with
the feelings of mankind.     *Wormley* v. *Wormley,* 207 Ill. 411,
69 N. E. 865, 3 L. R. A. (N. S.) 481, and monographic note;
*England* v. *Central Pocahontas Coal Company,* 86 W. Va.
575, 104 S. E. 46.     There is no doubt of the plaintiff's right
to resort to a court of equity to prevent interference with
the body of her dead uncle, unless it appears that it was in-
terred in a place where the plaintiff had no right to bury it.
There is no doubt but that one who acquires a cemetery lot
has some interest therein.     He does not acquire the fee in
the land.     His interest is more in the nature of a perpetual
easement, and it is likewise true that the exercise of this
right is subject to the police power of the state.     Conditions
may arise which would make such a cemetery a nuisance, in
which case the state, under its police power, could require its
removal and the re-interrment of the bodies at some other
point.     5 R. C. L. title "Cemeteries" § 10; *Grinnan* v. *Fred-
ericksburg Lodge,* 118 Va. 588; *Roanoke Cemetery Co.* v.
*Goodwin,* 101 Va. 605, 44 S. E. 769.

It seems to be quite as well established that this right may
be acquired by adverse possession as any other interest in
real estate may be acquired, and both of the parties in this
case contend that this is the way they did acquire the rights
for which they respectively contend in this suit.     The plot
of land in controversy was not enclosed by either of the
parties with any fence, and as before stated the limits of the
Shockey lot were not definitely marked upon the ground at
any time, at least not in 1893 when the defendant appropriat-
ed the lot.     There are some authorities which hold that in
order to the acquisition of title by adverse possession, where
such posession is not accompanied by any color of title, the
exterior boundaries must be indicated by a fence or barrier,
and if this rule is applied in this case neither of the parties
have had any adverse possession of this particular piece of
ground.     There is no doubt but that the extent of such claim

must be indicated in some way upon the ground, and this delimitation of the claim upon the ground must be of such character as to clearly indicate that it is claimed by the party asserting the right thereto.    There must be such marks as indicate that the land is under the actual control of the party claiming it. *Jacobus* v. *Congregation of Israel,* 107 Ga. 518, 33 S. E. 853; 5 R. C. L., title "Cemeteries" § 10; 2 C. J. §. 71; *Hook* v. *Joyce,* 94 Ky. 450, 21 L. R. A. 96; *Roumillot* v. *Gardner,* 113 Ga. 60, 53 L. R. A. 729; *Hines* v. *State,* 126 Tenn. 1, 149 S. W. 1058, 42 L. R. A. (N. S.) 1138; *Wooldridge* v. *Smith,* 243 Mo. 190, 147 S. W. 1019, 40 L. R. A. (N. S.) 752; *Illinois Steel Co.* v. *Bilot,* 109 Wis. 418, 85 N. W. 402, 83 Am. St. Rep. 905; *Lyons* v. *Fairmont Real Estate Co.,* 71 W. Va. 754.    The proof in this case is clear that the defendant had buried in her square a number of her relatives whose graves were marked by headstones indicating that at least the portion of the ground in which they were buried had been appropriated for that purpose.    If this had been all that she had done her interest might extend no further than the land occupied by these graves, but in addition to this, ever since the year 1893 she has had this entire square, including the land where plaintiff's uncle is buried, surrounded by a ridge indicating the limits of her claim, and has cared  for all of the land included within this slight barrier by sowing the same in grass, planting flowers thereon, and caring for the same from year to year as the same needed attention. This was a clear indication that this piece of ground had been appropriated by the defendant for burial purposes, and as held in the case of *Lyons* v. *Fairmont Real Estate Company, supra,* was a sufficient indication of the limits of her claim.    We are, therefore, of opinion that the defendant was entitled to the exclusive right to bury her dead in the space where the body of the plaintiff's uncle was buried, and that neither the plaintiff nor her father had any right to appropriate this land for the purpose of interring the body of their deceased relative therein.

The defendant, as before stated, asked for affirmative relief, and prayed that John W. Sherrard, the father of the

plaintiff, in addition to the plaintiff, be made a party defendant to her cross bill. This was done, and process served upon him upon the cross bill. Defendant now insists that she is not only entitled to defeat the plaintiff's claim, but is also entitled to a mandatory injunction herein commanding and requiring the plaintiff and her father to forthwith remove the body of their deceased relative from the place where the same is now buried, in order that she may enjoy the rights to which she is entitled. It would seem quite clear that where one trespasses upon the rights of another, and does some act which would prevent such other from enjoying to the full extent the privileges to which he is entitled, a court of equity will compel the guilty party to restore the *status quo*, and this is as true in the case of the unauthorized interment of a dead body as with any other interference. *McWhorter* v. *Newell*, 200 Ill., 583; *Dwenger* v. *Geary*, 113 Ind. 106.

It follows from what we have said that the decree complained of will be reversed, and the injunction dissolved, and that a mandatory injunction will be granted to the defendant, in accordance with the prayer of her cross bill answer, commanding and requiring the plaintiff and her father John W. Sherrard to forthwith remove the body of their deceased relative from the point where the same is now buried upon the defendant's lot, and the cause remanded for the purpose of executing this decree.

*Reversed and rendered.*