765 S.E.2d 163

**GENERAL PIPELINE CONSTRUCTION, INC., Petitioner,**

v.

**Cora Phillips HAIRSTON, et al., Respondents,**

and

**Equitable Production Company, Petitioner,**

v.

**Cora Phillips Hairston, et al., Respondents.**

Nos. 13–0933, 13–0934.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 30, 2014.

Decided Oct. 17, 2014.

---

278

Daniel R. Schuda, Esq., Schuda & Associates, PLLC, Charleston, WV, for Petitioner General Pipeline Construction, Inc.

Brian R. Swiger, Esq., Rodney W. Stieger, Esq., Jackson Kelly PLLC, Charleston, WV, for Petitioner Equitable Production Company.

Kevin W. Thompson, Esq., David R. Barney, Jr., Esq., Thompson Barney, Charleston, WV, for Respondents.

KETCHUM, Justice:

In this appeal from the Circuit Court of Logan County, we are asked to review a jury's verdict finding that two defendants desecrated numerous graves in an old, rural cemetery. The plaintiffs established that the defendants bulldozed a road through the cemetery, damaging the graves of their deceased next-of-kin.

West Virginia Code § 29–1–8a [1993] protects ancient, unmarked gravesites of historic significance. The statute preempts an exceptionally narrow class of common law grave desecration claims, and permits only the State Director of the Historic Preservation Section to seek criminal penalties and civil damages for disturbing old, unmarked gravesites. At trial, the plaintiffs proved their common law grave desecration claims involved marked gravesites, and proved their claims were neither encompassed within nor preempted by the statute. Nevertheless, at the request of the plaintiffs, the circuit court instructed the jury it could consider whether the defendants violated W.Va.Code § 29–1–8a when they damaged the cemetery, and could impose liability upon the defendants for those violations.

As we discuss below, we find that the circuit court improperly instructed the jury about W.Va.Code § 29–1–8a to the prejudice of the defendants. In drafting W.Va.Code § 29–1–8a, the Legislature did not intend to create a private cause of action in the plaintiffs. Despite the evidence of record favorable to the plaintiffs, we cannot say the circuit court's erroneous instruction to the jury was harmless.

As set forth below, we reverse the jury's verdict and award the defendants a new trial.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Crystal Block Hollow is the site of a now-defunct coal mining town near the unincorporated city of Sarah Ann, deep in the hills of Logan County, West Virginia. Within Crystal Block Hollow lies the Crystal Block Cemetery, which was established sometime after 1923 when the Crystal Block Coal & Coke Company leased the land. The lease allowed Crystal Block Coal & Coke Company to establish a company mining town, and of the many structures erected by the company, one was a cemetery for company employees and their families. Death certificates, the Register of Death, and local funeral home records identify the Crystal Block Cemetery as the final resting place for numerous decedents.

Defendant Equitable Production Company[1] ("Equitable") explores for and produces oil and natural gas. Defendant General Pipeline Construction, Inc. ("General Pipeline") constructs pipelines for Equitable.

In 2004, Equitable began a project to relocate a gas pipeline on a large tract of wooded, unimproved land in Crystal Block Hollow. Equitable contracted with General Pipeline to relocate the pipeline in July 2004. Prior to construction, Equitable checked its own title documents and marked the right-of-way for the pipeline across the tract, and it generally established where General Pipeline could enter and egress from the tract to access the pipeline.

In August 2004, Vandle Keaton, a bulldozer operator for General Pipeline, constructed a road across the tract to relocate the pipeline. Trial testimony indicated that Mr. Keaton did not inspect the path upon which he planned to bulldoze the road. A witness testified he warned Mr. Keaton that there was "a cemetery over in there and it's black people," but Mr. Keaton inveighed his lack of care for the African–American occupants of the cemetery with a derogatory term. Mr. Keaton plowed the road through the Crystal Block Cemetery with his bulldozer, removing headstones, crosses and fieldstones that marked gravesites. Other employees of General Pipeline testified to later digging stone and marble grave markers out of the dirt pushed aside by the bulldozer. Those employees used shovels and rakes to repair some damage to the graves, and moved the displaced grave markers to depressions in the ground that they suspected were graves. Mr. Keaton apparently used the road he plowed through the cemetery to construct other roads to access other portions of the tract.

A witness testified he visited the cemetery during a family reunion, around August 7, 2004, and discovered the bulldozed roadway and the damage to the graves and headstones. Equitable asserts it learned of the damage to the cemetery the day after the damage was done. However, records suggest it was not until late September 2004 that an Equitable project supervisor actually visited the cemetery. Equitable thereafter twice sent employees to backfill, grade, seed, mulch and otherwise "reclaim" the area.

The plaintiffs are fourteen individuals who together have seven next-of-kin decedents buried in Crystal Block Cemetery.[2] The plaintiffs brought suit claiming that defendant General Pipeline's use of the bulldozer, and defendant Equitable's ensuing reclamation activities, desecrated their seven decedents' graves in the cemetery. The plaintiffs generally asserted that Equitable and General Pipeline failed to do a walk-through of the property prior to construction; that Equitable failed to conduct a survey for the presence of cemeteries on the tract prior to construction; and that Equitable failed to properly supervise General Pipeline's work on the project. The plaintiffs also claimed that after, the defendants learned of the cemetery, they failed to prevent others from using the newly-bulldozed access road through the cemetery for four-wheeling and accessing the cemetery for parties.

In 2009, following the exchange of written discovery, the circuit court certified several questions to this Court regarding a cause of action for desecration of a cemetery. In *Hairston v. General Pipeline Construction, Inc.*, 226 W.Va. 663, 704 S.E.2d 663 (2010) ("*Hairston I*"), we examined the historical development of the common law claim for desecration of graves, and identified the ele-

1. Equitable is now known as EQT Production Company.

2. The plaintiffs filed four separate complaints in August 2006 and one complaint in July 2007. The suits were consolidated for trial. The plaintiffs are: Cora Phillips Hairston and Shirley Wilder (for the Estate of Louella Phillips Wilder) (06–C–238) (seeking damages for decedent Frank Phillips); James Olbert, Daniel Olbert, Jr., Jacqueline Olbert Washington, Jacqueline Powell–Hamlet (for the Estate of Ulysses Olbert), and Gloria Olbert (06–C–239) (seeking damages for decedent Daniel Olbert, Sr.); Jimmy Early and Edward Early (06–C–240) (seeking damages for decedents Ira C. Early and Napoleon Short Early); Carol Coles Jones, Carolyn Coles Monroe, and Harry Jones Coles (06–C–241) (seeking damages for decedents James Edward Coles and Fannie Mae Coles); and Daniel Jerome Newsome and Ann Newsome Lewis (07–C–234) (seeking damages for decedent Charles Jerry Newsome).

ments to prove the cause of action.[3] We concluded that a plaintiff who proves that the grave of their next-of-kin has been desecrated may recover "nominal damages; compensatory damages if actual damage has occurred; mental distress; and punitive damages if the defendant's conduct is determined to be willful, wanton, reckless, or malicious." Syllabus Point 10, *Hairston I, supra.*

■ However, we also recognized in *Hairston I* that the West Virginia Legislature enacted a statute to protect grave sites of historical significance. We concluded that this statute, W.Va.Code § 29–1–8a [1993],[4] preempts common law grave desecration cases, but only in very limited instances. Specific to this case, the common law claims that are preempted include those that involve an "unmarked grave ... of historical significance." Syllabus Point 2, *Hairston I, supra.*[5] When a person discovers they have disturbed an unmarked grave of historical significance, the statute imposes certain duties. For instance, it requires the person to "[w]ithin forty-eight hours ... notify the county sheriff" and to stop any "further disturbance[.]" W.Va.Code § 29–1–8a(d). An action for damages may be brought under W.Va.Code § 29–1–8a only by the State Director of the Historic Preservation Section, the damages

that may be recovered are limited, and the damages are payable only to the State Endangered Historic Properties Fund. W.Va. Code § 29–1–8a(g). Furthermore, the statute imposes criminal penalties for intentionally disturbing an "unmarked grave ... of historical significance," and for intentionally withholding information about the disturbance. W.Va.Code § 29–1–8a(c)(1).

Following our decision of *Hairston I,* the case returned to the circuit court for trial. The trial, which ended in October 2013, lasted approximately three weeks. At trial, the plaintiffs established that the graves of their next-of-kin decedents were all marked, and therefore not encompassed by W.Va.Code § 29–1–8a. Still, the circuit court allowed the plaintiffs to present evidence to the jury suggesting that the defendants violated W.Va.Code § 29–1–8a, because upon disturbing graves in the cemetery they failed to notify the county sheriff and did not cease any activity which might have further disturbed the graves. Further, the circuit court instructed the jury on the requirements of W.Va.Code § 29–1–8a and the criminal penalties, and stated that the jury could find the defendants negligent for violating the statute.

The jury returned a verdict finding Equitable and General Pipeline liable to the plain-

---

3. Syllabus Point 8 of *Hairston I* provides:

> The elements of a common law cause of action for grave desecration are: (1) the grave site in question must be within a publicly or privately maintained cemetery, clearly marked in a manner which will indicate its use as a cemetery, with identifiable boundaries and limits; (2) dedication of the area to the purpose of providing a place of burial by the owner of the property or that the owner acquiesced in its use for burial; (3) that the area was identifiable as a cemetery by its appearance prior to the defendant's entry or that the defendant had prior knowledge of the existence of the cemetery; (4) that the decedent in question is interred in the cemetery by license or right; (5) that the plaintiff is the next of kin of the decedent with the right to assert a claim for desecration; and (6) that the defendant proximately caused, either directly or indirectly, defacement, damage, or other mistreatment of the physical area of the decedent's grave site or common areas of the cemetery in a manner that a reasonable person knows will outrage the sensibilities of others.

4. W.Va.Code § 29–1–8a was modified by the Legislature in 2010. *See 2010 Acts of the Legislature,* Ch. 18. However, no changes were made that affect our decision.

5. Syllabus Point 2 of *Hairston I* provides:

> West Virginia Code § 29–1–8a (1993) preempts common law with respect to the matters specifically addressed in the statute. The statute preempts all common law claims involving "historic or prehistoric ruins, burial grounds, archaeological site, or human skeletal remains, unmarked grave, grave artifact or grave marker of historical significance." W.Va.Code § 29–1–8a(c)(1).

> W.Va.Code § 29–1–8a(b)(2) gives the following definition for an "unmarked grave":

>> "Unmarked grave" means any grave or location where a human body or bodies have been buried or deposited for at least fifty years and the grave or location is not in a publicly or privately maintained cemetery or in the care of a cemetery association, or is located within such cemetery or in such care and is not commonly marked[.]

tiffs for desecration of their decedents' graves in the Crystal Block Cemetery. The jury awarded each plaintiff $50,000 in damages for mental distress, and awarded plaintiff Cora Phillips Hairston an additional $14,000 in compensatory damages as "overseer of restoration of cemetery." The jury also found that both defendants were reckless in their actions, and awarded the plaintiffs $200,000 in punitive damages against Equitable. The jury declined to award punitive damages against General Pipeline.

The circuit court entered judgment on the jury's verdict on November 20, 2012, and entered an order that denied the defendants' motions for a new trial on July 26, 2013. Equitable and General Pipeline filed separate appeals of the circuit court's orders to this Court, and we consolidated the appeals for decision.

## II.

## STANDARD OF REVIEW

The defendants appeal from the circuit court's ruling denying their motions for a new trial. When reviewing a circuit court's ruling on such a motion, we have held that

> [t]he ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syllabus Point 4, in part, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). *Accord Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995) ("We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review."). *See*

*also State v. Crouch,* 191 W.Va. 272, 275, 445 S.E.2d 213, 216 (1994) ("The question of whether a new trial should be granted is within the discretion of the trial court and is reviewable only in the case of abuse.").

## III.

## ANALYSIS

The defendants raise three issues of substance on appeal. First, the defendants argue it was error for the trial court to instruct the jury that it could find the defendants negligent, and award the plaintiffs damages, under W.Va.Code § 29–1–8a. Second, the defendants argue the trial court erred in allowing an expert witness to testify as to the meaning and application of W.Va.Code § 29–1–8a. Finally, we discuss the manner in which the circuit court permitted the jury to consider whether the defendants spoliated evidence favorable to the plaintiffs, and as a result instructed the jury it could make an adverse inference against the defendants.

### A. W.Va.Code § 29–1–8a and Unmarked Graves

The defendants' central argument concerns W.Va.Code § 29–1–8a. Throughout the trial, the parties dickered over whether the jury could be instructed on the duties imposed by W.Va.Code § 29–1–8a. In *Hairston I*, we found that if the desecration of an ancient, unmarked grave is encompassed by W.Va.Code § 29–1–8a, then any common-law claim for that desecration is preempted and only the State may pursue the remedies outlined in the statute. At trial, the plaintiffs produced evidence showing that all seven gravesites of their kin were (in some fashion) marked, thereby clearly establishing that their claims were not encompassed within or preempted by W.Va.Code § 29–1–8a.

■ Nevertheless, the plaintiffs claimed that *some* of the gravesites disturbed by the defendants—gravesites of decedents unrelated to the plaintiffs—*were* unmarked.[6]

---

6. The trial court was understandably confounded by the language of W.Va.Code § 29–1–8a(d), which imposes duties upon a person who discovers a "grave marker in an unmarked grave." Standard rules of statutory construction require we presume the Legislature intended for every word in a statute to have meaning. "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syllabus Point 3, *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999). *See*

Hence, the plaintiffs argued to the trial court that the defendants *did* violate the duties imposed by W.Va.Code § 29–1–8a when a person discovers they have disturbed an unmarked grave, and introduced testimony suggesting the defendants violated the statute. At the trial's conclusion, even though there was no plaintiff in court representing the decedents in unmarked graves, the trial court found the "statute applies and triggers the duty to report" the disturbance of the unmarked graves to the county sheriff.[7] The circuit court then instructed the jury to weigh whether the defendants violated the statute.

■■■ The plaintiffs argued that the defendants' failure to comply with W.Va.Code § 29–1–8a was negligence. This Court has often stated, "It is a firmly established rule in West Virginia that a defendant's disregard of a statute is *prima facie* negligence." *Hersh v. E–T Enterprises, Ltd. Partnership,* 232 W.Va. 305, 311, 752 S.E.2d 336, 342 (2013) (citing cases holding a violation of a statute, municipal ordinance, or safety regulation constitutes a *prima facie* case of negligence). The plaintiffs claimed that, because the evidence at trial suggested the defendants disregarded their statutory duties to contact the county sheriff after damaging gravesites or to cease activity that might further disturb the cemetery, the jury could find the defendants were negligent toward the plaintiffs. We reject the plaintiffs' argument.

■■■ While a defendant's disregard of a statute may, in most cases, be evidence of

*prima facie* negligence, in some circumstances that is not the case. In Syllabus Point 1 of *Hurley v. Allied Chemical Corporation,* 164 W.Va. 268, 262 S.E.2d 757 (1980), we identified four considerations courts may use in weighing whether a defendant's violation of a statute can be the basis for a plaintiff's cause of action:

> The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.[8]

The plaintiffs' use of W.Va.Code § 29–1–8a as the basis of a negligence claim fails the first two elements of the *Hurley* test.

■■■ First, the "violation of a statute, intended for the protection of persons of a certain class, cannot be the basis of a cause of action on the part of persons not belonging to the class intended to be protected by the statute." Syllabus Point 1, *Steiner v. Muldrew,* 114 W.Va. 801, 173 S.E. 891 (1934). The stated legislative purpose of W.Va.Code § 29–1–8a(a) is to defend "the safety and sanctity of unmarked graves," so

---

*also State ex rel. Johnson v. Robinson,* 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979) ("It is a well known rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning."). We are at a loss to understand what the Legislature meant by the phrase "grave marker in an unmarked grave."

Still, we note that some of the graves in the Crystal Block Cemetery were "marked" in the sense that a blank fieldstone was placed at the head of the grave. Otherwise, the identity of the decedent was unknown. Hence, the plaintiffs contended at trial that the defendants disturbed a "grave marker in an unmarked grave."

7. The trial court determined that, "once they [the defendants] knew that this graveyard had been

defiled or desecrated, then they had a strict duty to comply with that statute." The trial court stated:

> There are two classes of graves here in this cemetery. We have marked graves and we have unmarked graves. The evidence is clear from the Plaintiffs' side that there are marked graves and unmarked graves. *The statute in this case*—I don't know what else it applies to, but by golly it applies to unmarked graves.

8. In *Hurley,* we noted that "the states enjoy a large reservoir of power not pre-empted by federal law," but courts should still consider whether a state-law-based caused of action might "conflict with a remedy within the exclusive purview of the federal government." *Hurley,* 164 W.Va. at 273, 262 S.E.2d at 761.

as to allow the "appropriate pursuit" of "worthy scientific and educational activities" by "those persons engaged in the scientific study or recovery of artifacts[.]" In other words, the statute is intended to protect the rights of people engaged in the scientific study of ancient, historic graves. Hence, the plaintiffs in this case are not in the class intended to be protected by W.Va.Code § 29–1–8a.

Second, we must give consideration to whether the Legislature intended to infer the creation of a private cause of action. We find that it did not. W.Va.Code § 29–1–8a requires a person who disturbs an ancient grave to contact the sheriff; the statute then requires the sheriff to notify the Director of the Historic Preservation Section. W.Va. Code § 29–1–8a(d). It is only the Director of the Historic Preservation Section who is then empowered to enforce the statute, and to call upon the county prosecutor for assistance in seeking criminal penalties and civil damages. W.Va.Code § 29–1–8a(g)(1). The statute specifies the civil damages that may be recovered, and then states that the damages must be spent only for state purposes:

> When civil damages are recovered, the proceeds, less the costs of the prosecuting attorney associated with the determination and collection of such damages, shall be deposited into the endangered historic properties fund and may be expended by the commissioner of culture and history for archaeological programs at the state level, including the payment of rewards for information leading to the arrest and conviction of persons violating the provisions of subdivisions (1) and (2), subsection (c) of this section.

W.Va.Code § 29–1–8a(g)(2). Because of the Legislature's specificity in creating the cause of action in an agency of the State of West Virginia, we cannot say the Legislature intended also to infer the creation of a private cause of action in the plaintiffs.

In summary, applying the *Hurley* test, we find that W.Va.Code § 29–1–8a does not give rise by implication to a private cause of action.

■ The defendants argue the circuit court erred in instructing the jury that they could find the defendants negligent for violating W.Va.Code § 29–1–8a. Generally, the formulation of jury instructions is within the broad discretion of the trial court. Syllabus Point 6, *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995). However, "if an objection to a jury instruction is a challenge to a trial court's statement of the legal standard, this Court will exercise *de novo* review." *State v. Guthrie,* 194 W.Va. 657, 671, 461 S.E.2d 163, 177 (1995). "A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence." Syllabus Point 4, in part, *State v. Guthrie, supra.* "It is reversible error to give an instruction which is misleading and misstates the law applicable to the facts." Syllabus Point 4, *State v. Travis,* 139 W.Va. 363, 81 S.E.2d 678 (1954). Stated differently, "a jury instruction is erroneous if it has a reasonable potential to mislead the jury as to the correct legal principle or does not adequately inform the jury on the law. An erroneous instruction requires a new trial unless the error is harmless." *State v. Miller,* 197 W.Va. 588, 607, 476 S.E.2d 535, 554 (1996) (citation omitted). *See also* Syllabus Point 2, *Hollen v. Linger,* 151 W.Va. 255, 151 S.E.2d 330 (1966) ("An erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not prejudiced by such instruction.").

■ After carefully reviewing the record, we find the plaintiffs presented a sufficient amount of evidence to take their common law cause of action for grave desecration to the jury. However, substantial evidence was also presented suggesting the defendants violated the numerous duties found within W.Va.Code § 29–1–8a, and the circuit court erroneously (and extensively) instructed the jury it could impose liability upon the defendants for those violations. The circuit court's instruction was misleading, misstated the law, and clearly mislead the jury as to the correct legal principles to guide its decision. The instruction is presumed to be prejudicial and, despite the evidence favorable to the plaintiffs, we simply cannot say the error was

harmless. Accordingly, we find a new trial is warranted.[9]

### B. Testimony of an expert as to the meaning of the law

■ An archaeologist and land surveyor working for a civil engineering firm, William Updike, testified as an expert for the plaintiffs. Mr. Updike has years of archaeological field experience studying coal company towns. He testified he had worked with various construction companies in the past (including coal companies and pipeline companies), and that—in his surveying fieldwork—he has discovered at least 100 cemeteries. Among various opinions offered by Mr. Updike, he testified to the appropriate actions that construction companies follow upon discovering a gravesite.

The defendants argue that the circuit court erred in allowing Mr. Updike to testify about the meaning of W.Va.Code § 29-1-8a, and how the defendants should have interpreted the statute. Mr. Updike interpreted the statute to require the defendants to contact the sheriff upon discovery of "evidence of a cemetery during construction activities," to stop all work, and to obtain a permit from the State Historic Preservation office before "moving, repairing or restoring a cemetery."

■ Rule 702 of the West Virginia Rules of Evidence allows an expert to give an opinion only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" An expert's testimony is proper under Rule 702 "if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. However, when the purpose of the testimony is to direct the jury's understanding to the legal standards upon which their verdict must be based, the testimony should not be allowed." *Jackson v. State Farm Mut. Auto. Ins. Co.*, 215 W.Va. 634, 644, 600 S.E.2d 346, 356 (2004) (quoting 2 Franklin D. Cleckley, *Handbook On Evidence For West Virginia Lawyers* § 7-4(B), 7-78 (2000)). "As a general rule, an expert witness may not testify as to questions of law such as the principles of law applicable to a case, the interpretation of a statute, the meaning of terms in a statute, the interpretation of case law, or the legality of conduct. It is the role of the trial judge to determine, interpret and apply the law applicable to a case." Syllabus Point 10, *France v. Southern Equipment Co.*, 225 W.Va. 1, 689 S.E.2d 1 (2010).

■ "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syllabus Point 6, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991). To the extent that the circuit court allowed Mr. Updike to offer his opinion on the interpretation of W.Va.Code § 29-1-8a, and whether the defendants violated that *Code* section, we find that the circuit court was clearly wrong.[10]

---

**9.** The circuit court also instructed the jury on W.Va.Code § 61-8-14 [2010], which imposes criminal penalties for the intentional desecration of "any tomb, plot, monument, memorial, or marker in a cemetery, or any gate, door, fence, wall, post, or railing, or any enclosure for the protection of a cemetery or any property in a cemetery, graveyard, mausoleum or other designated human burial site[.]" The statute also penalizes intentional damage to "any building, statuary, ornamentation, landscape contents, including a tree, shrub, flower, or plant, within the limits of a cemetery[.]" The defendants do not challenge the circuit court's instructions on this statute. Further, applying *Hurley*, we find no impediment to a civil cause of action for violation of this statute. *See also*, W.Va.Code § 55-7-9 [1923] ("Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages.")

**10.** We note, however, that the defendants' briefs include a shopping list of complaints about Mr. Updike's testimony, including whether he had specific training in the oil and gas industry, or experience on a "non-jurisdictional gathering pipeline." Essentially, the defendants argue that Mr. Updike was only experienced with the archeological responsibilities of companies digging for long-distance gas pipelines covered by federal law, and not the archeological responsibilities of companies digging pipelines not covered by federal law.

We reject the defendants' arguments. The qualifications of an expert are within the discretion of the trial court (*see, e.g.*, Syllabus Point 5, *Mayhorn v. Logan Medical Foundation*, 193

## C. Spoliation of Evidence and the Anticipation of Litigation

At the request of the plaintiffs and over the objection of the defendants, the trial court instructed the jury that it could make an adverse inference if it found that the defendants "spoliated" or destroyed evidence when they attempted to repair damage to the cemetery. The trial court allowed the jury to consider whether the defendants had possession, control, or authority over the cemetery, and to consider whether the defendants failed to preserve evidence in the cemetery that should have been part of the plaintiff's case. If the jury found those two elements, then the trial court allowed the jury to infer that the evidence would have been adverse to the defendants. The defendants argue that the circuit court erred in giving this instruction.

We have established the following procedure for trial courts to follow in giving an adverse inference instruction in cases of spoliation:

Before a trial court may give an adverse inference jury instruction or impose other sanctions against a party for spoliation of evidence, the following factors must be considered: (1) the party's degree of control, ownership, possession or authority over the destroyed evidence; (2) the amount of prejudice suffered by the opposing party as a result of the missing or destroyed evidence and whether such prejudice was substantial; (3) the reasonableness of anticipating that the evidence would be needed for litigation; and (4) if the party controlled, owned, possessed or had authority over the evidence, the party's degree of fault in causing the destruction of the evidence. The party requesting the adverse inference jury instruction based upon spoliation of evidence has the burden of proof on each element of the four-factor spoliation test. If, however, the trial court finds that the party charged

with spoliation of evidence did not control, own, possess, or have authority over the destroyed evidence, the requisite analysis ends, and no adverse inference instruction may be given or other sanction imposed.

Syllabus Point 2, *Tracy v. Cottrell ex rel. Cottrell,* 206 W.Va. 363, 524 S.E.2d 879 (1999).

The defendants assert that, on the third element of the *Tracy* test, they did not have a reasonable anticipation that the evidence contained within the cemetery would be needed for litigation. At this point, and on this record, we are not persuaded by the defendants' assertions. The defendants *may* have anticipated that their actions in damaging the cemetery could lead to litigation, and *may* have sought to remediate damage in the cemetery in order to deter the plaintiffs' ability to successfully pursue their action. However, as we have found another ground to reverse the jury's verdict and remand this case, we decline to address the defendants' assertions. We leave it to the trial court on remand to reconsider the parties' arguments on this issue.

What we find troubling is that the trial court abdicated its role to weigh the four-factor *Tracy* test before allowing the jury to hear evidence of spoliation. Syllabus Point 2 of *Tracy* states that the four factors must be considered *by the trial court,* not the jury, before the court can give an adverse jury instruction (or impose other sanctions for spoliation of evidence). When a party seeks to present evidence of spoliation to a jury and intends to pursue an adverse inference jury instruction, on motion of a party the trial court must have an *in camera* hearing to assess whether the party asserting spoliation can make a *prima facie* case under Syllabus Point 2 of *Tracy*. The trial court can then make an initial determination whether the party seeking to present spoliation evidence can meet its basic burden of

---

W.Va. 42, 454 S.E.2d 87 (1994)), but the defendants' objections are directed toward the weight of Mr. Updike's testimony, not his educational and experiential qualifications. *See Gentry v. Mangum,* 195 W.Va. 512, 525, 466 S.E.2d 171,

184 (1995) ("What must be remembered ... is that there is no 'best expert rule.' "). We find no error in the trial court's decision to allow Mr. Updike's testimony.

proof on each of the four factors set out in *Tracy*, before the jury hears the evidence.

 Put another way, *Tracy* requires that the party seeking an adverse inference jury instruction to first proffer to the trial court, before the spoliation evidence is presented to the jury, evidence suggesting that the opposing party controlled, owned, possessed, or had authority over the destroyed evidence; that there was substantial prejudice caused by the destruction of evidence; that the opposing party had a reasonable anticipation the evidence would be needed in future litigation; and that the opposing party against whom the instruction is sought had some degree of fault in causing the destruction of evidence.

In the instant case, the trial court did not conduct such a hearing outside of the presence of the jury to weigh the *Tracy* factors. On remand, the trial court should timely conduct such a hearing.

## IV.

## CONCLUSION

We reverse the circuit court's November 20, 2012, and July 26, 2013, orders, and remand this case to the circuit court for a new trial.[11]

Reversed and remanded.

---

11. The defendants also argue the circuit court erred in refusing to instruct the jury on the authority of the Federal Energy Regulatory Commission, and in refusing to instruct the jury that the federal Natural Gas Act (15 U.S.C. § 717(b)) did not apply to the plaintiffs' case. Additionally, the defendants assert the circuit court erred in allowing personal representatives of deceased plaintiffs to participate in the trial. We find no merit to these arguments by the defendants.

The remaining issues raised by the defendants—such as whether it was error for the circuit court to deny a jury view of the cemetery, or the convoluted manner in which the circuit court gave punitive damage instructions to the jury—are procedural issues for the court to deal with on remand.