# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michael Gilbert, individually and as
Administrator and personal representative
of the Estate of Patrick M. Gilbert, deceased,
Plaintiff Below, Petitioner**

**vs) No. 15-0994** (Kanawha County 13-C-358)

**West Virginia Department of Transportation,
Division of Highways, Ronnie Lee Conrad, and John Doe(s),
Defendants Below, Respondents**

**FILED**

**November 10, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael Gilbert, individually and as Administrator and personal representative of the Estate of Patrick M. Gilbert, deceased, by counsel Michael A. Jacks, appeals the "Order Denying Plaintiff's Motion to Set Aside Verdict and For a New Trial" entered by the Circuit Court of Kanawha County on September 14, 2015. Respondents West Virginia Department of Transportation, Division of Highways, Ronnie Lee Conrad, and John Doe(s), by counsel James D. Stacy II, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

This case stems from a motor vehicle accident that occurred on Interstate 79, about ten miles south of Weston, West Virginia, on March 6, 2011. On that day, Respondent Ronnie Conrad, an employee of Respondent West Virginia Division of Highways ("DOH"), was driving a DOH Ford F-250 truck southbound in the right-hand lane to patrol the stretch of the interstate between Weston and Flatwoods. The weather was overcast, snow was falling, and slush was forming on the roadway. Mr. Conrad's coworker, James Mimms, was in the passenger seat.

As Mr. Conrad drove through a right-hand curve, Mr. Mimms spotted a disabled vehicle on the right-hand berm facing northbound that had spun one-hundred and eighty degrees to face oncoming traffic. Mr. Mimms advised Mr. Conrad that he spotted the vehicle and that he believed the driver was still inside. In response, Mr. Conrad slowed his truck and pulled onto the right-hand berm. Behind the truck driven by Mr. Conrad was a Toyota Corolla being driven

1

southbound by Patrick Gilbert ("Mr. Gilbert"), petitioner's twenty-year-old son. With Mr. Gilbert in the Toyota were his sister, Jamie Spik, who was seated in the front passenger seat, and his brother, Kyle Gilbert, who was seated in the back seat. The three siblings were traveling from Pittsburgh to South Carolina. It is undisputed that Mr. Gilbert collided with the left rear corner of the DOH truck and died as a result of the accident.

Soon after the collision, West Virginia State Police Trooper Roy Allen Moss, who was traveling southbound through the same stretch of interstate, came upon the disabled vehicle in the right-hand berm facing the opposite direction. Trooper Moss spoke to the driver, who was uninjured. As Trooper Moss traveled further south, he came to Mr. Gilbert's Toyota that was off of the interstate. Trooper Moss attempted to interview Ms. Spik and Kyle Gilbert, who were outside of the vehicle, but neither could state what had occurred. Trooper Moss then came to Mr. Conrad's truck in the berm. He interviewed Mr. Conrad and Mr. Mimms, both of whom stated that they had been struck from behind by the Toyota after they had pulled off of the interstate and were slowing down in the berm. Trooper Moss took measurements from the accident scene that he incorporated into a diagram.

Petitioner filed a wrongful death action against Mr. Conrad and the DOH, claiming that Mr. Conrad's negligence caused the accident that resulted in his son's death. The matter proceeded to a jury trial in February of 2015. Petitioner's theory at trial was that Mr. Gilbert struck the DOH truck while the DOH truck was still at least partially on the interstate in the process of slowing down and pulling onto the berm, as opposed to striking the DOH truck after it was already on the berm. Petitioner supported this theory with the testimony of Ms. Spik, who claimed that something was directly in front of them that caused Mr. Gilbert to slam on his brakes and turn sharply to the right. Ms. Spik testified that these memories came to her approximately a couple of days to a month after the accident. Petitioner also claimed, through expert testimony, that Mr. Conrad must have slowed the DOH truck too abruptly, as evidenced by (1) the testimony that Mr. Simms told Mr. Conrad about the disabled vehicle two to four seconds after spotting it; (2) the fact that it typically takes a driver one to one-and-a-half seconds to apply the brakes after deciding to stop; (3) the testimony that Mr. Conrad was traveling at approximately fifty miles per hour when he passed the disabled vehicle; and (4) assuming the estimates of stop-time and Mr. Conrad's speed were accurate, Mr. Conrad would have had to apply his brakes very hard to come to a stop at the point of collision.

Respondents' evidence was that Mr. Conrad used his right turn signal light before he started to pull onto the berm; that Mr. Conrad was trained not to use his overhead warning lights until he was on the berm; that Mr. Conrad had been traveling on the berm for several feet before being struck by the Toyota; that Mr. Conrad did not stop on the roadway, but rather had moved to stop on the shoulder of the highway, in accordance with his training; and that Mr. Conrad, in accordance with his habit, did not decelerate rapidly when preparing to move onto the shoulder, but rather, traveled significantly beyond the disabled vehicle. Additionally, Mr. Mimms testified that they were on the shoulder when Mr. Gilbert struck them, and the impact forced the DOH truck back onto the highway; that Mr. Conrad used his right turn signal before pulling onto the shoulder; and that Mr. Conrad did not decelerate rapidly, as petitioner alleged.

Respondents also relied upon expert testimony to show that Mr. Gilbert was negligent in the accident. The expert testified that Mr. Conrad's tire mark from his left rear tire showed that his truck was completely on the shoulder when it was struck from behind; that based upon the distance between the disabled car and the point of impact, there should have been ample time for Mr. Gilbert to brake to avoid the collision, instead of Mr. Gilbert slamming on his brakes and going into spin; and that the estimates of the time it took for Mr. Simms to report spotting the disabled car to Mr. Conrad and the time it took for Mr. Conrad to begin slowing down had to be too long, given that the DOH truck was only three-hundred and fifty feet from the disabled car at the time of impact.

The jury returned a verdict in favor of respondents, finding that Mr. Conrad committed no negligence in the collision. Petitioner filed a motion to set aside the verdict and for a new trial in which he argued that (1) the verdict was against the clear weight of the evidence, and (2) the circuit court erroneously refused to allow petitioner's expert to testify that Mr. Conrad violated West Virginia Code § 17C-13-3(a)(17), which prohibits stopping on a controlled access highway under certain conditions. By order entered on September 14, 2015, the circuit court denied petitioner's motion, and this appeal followed.

**Discussion**

This Court has held as follows when addressing a motion to set aside a jury verdict and grant a new trial:

> A motion for a new trial is governed by a different standard than a motion for a directed verdict. When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure,* the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

Syl. Pt. 3, *In re State Pub. Bldg. Asbestos Litig.,* 193 W. Va. 119, 454 S.E.2d 413 (1994). We have further that

> [i]n determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syl. Pt. 5, *Orr v. Crowder*, 173 W. Va. 335, 315 S.E.2d 593 (1983). With these standards in mind, we turn to petitioner's arguments.

3

Petitioner raises six assignments of error on appeal, the first of which is that the circuit court wrongfully limited and precluded certain testimony from petitioner's expert witness. At trial, petitioner called an accident reconstructionist to testify that Mr. Conrad stopped too abruptly on the highway, causing Mr. Gilbert to crash into him while the DOH truck was still on the road, rather than off the road as respondents contended. The expert's report concluded that Mr. Conrad violated West Virginia Code § 17C-13-3(a)(17), which states that stopping a vehicle on a controlled access highway is a misdemeanor. Additionally, petitioner complains that the circuit court did not allow petitioner's expert to mention the West Virginia Commercial Driver's License manual in his testimony. This Court has held that a circuit court's admission or exclusion of evidence will not be disturbed unless it appears that such action amounts to an abuse of discretion. *See Lacy v. CSX Corp.,* 205 W. Va. 630, 520 S.E.2d 418 (1999).

Petitioner argues that the circuit court prohibited him from asking the expert whether Mr. Conrad violated the statute on the basis that such inquiry allows the expert to interpret a statute or express an opinion on the legality of conduct, which is prohibited by *General Pipeline Const. v. Hairston,* 234 W. Va. 274, 765 S.E.2d 163 (2014). However, according to petitioner, the circuit court confused allowing an expert to interpret a law with an expert referring to a statute in order to establish the duty and standard of care in a negligence case, the latter of which is permissible. Petitioner contends that if he had been permitted to ask his expert his opinion about the ultimate issue – negligence – it would have had a substantial impact on the jury because it would have explained the cause of the collision. Additionally, petitioner argues that the circuit court should not have limited petitioner's expert from referring to the West Virginia Commercial Driver's License manual because it is not a statute; it is similar to a treatise, to which an expert may refer in his or her testimony.[1]

Upon our review of the record, we find no error by the circuit court. Petitioner's expert was permitted to testify to his observations and calculations that supported petitioner's theory, i.e., that Mr. Conrad failed to engage his overhead lights or directional arrow; that Mr. Conrad decelerated rapidly in order to pull onto the berm, causing Mr. Gilbert to have insufficient time to avoid the DOH truck; and the collision occurred partly on the road. Further, petitioner's expert was permitted to refer to and quote from the CDL manual with regard to perception and reaction times, as well as the prohibition of a driver stopping his vehicle on a controlled access highway. Despite the fact that the circuit court prevented petitioner's expert from saying that Mr. Conrad violated West Virginia Code § 17C-13-3(a)(17), the entire text of the statute was read into evidence without any objection by respondent, and the circuit court gave an instruction on it.

As respondents correctly argue, this case was about whether the collision occurred on the roadway or on the berm. There was lay testimony on this issue, and the jury believed that Mr. Gilbert collided with the DOH after the DOH truck had left the roadway. We decline to usurp the role of the jury in deciding the matter differently. *See Long v. City of Weirton*, 158 W. Va. 741, 214 S.E.2d 832 (1975).

---

[1] We note that the circuit court also prohibited respondents' expert from referring to the Pennsylvania Driver's License Manual in his testimony that Mr. Gilbert was negligent.

4

Petitioner's second assignment of error also relates to the circuit court's handling of expert testimony. Petitioner argues that the circuit court allowed unreliable, speculative, and misleading testimony from respondents' expert, an accident reconstructionist, who testified that that Mr. Conrad braked reasonably and decelerated slowly. Petitioner contends these opinions were speculative and contradicted by Mr. Conrad's and Mr. Mimm's testimony. In syllabus point two of *Harris v. CSX Transp., Inc.*, 232 W. Va. 617, 753 S.E.2d 275 (2013), this Court held as follows:

> When a trial court is called upon to determine the admissibility of scientific expert testimony, in deciding the "reliability" prong of admissibility the focus of the trial court's inquiry is limited to determining whether the expert employed a methodology that is recognized in the scientific community for rendering an opinion on the subject under consideration. If the methodology is recognized in the scientific community, the court should then determine whether the expert correctly applied the methodology to render his or her opinion. If these two factors are satisfied, and the testimony has been found to be relevant, and the expert is qualified, the expert may testify at trial.

The testimony at trial was that the DOH truck was traveling fifty to fifty-five miles per hour when Mr. Conrad and Mr. Mimms approached the disabled vehicle; that Mr. Mimms testified that it took about three to four seconds for him to see the occupant, inform Mr. Conrad, and for Mr. Conrad to apply the brakes; and they were traveling twenty miles per hour when Mr. Gilbert collided with them. Petitioner asserts that respondent's expert supplanted this testimony with his own conclusions that the sequence must have been closer to two seconds, based on the average reaction time to apply brakes. Respondent's expert was permitted to discount Mr. Conrad's and Mr. Mimm's testimony by opining that individuals generally estimate their speed correctly, but not their time and distances.

"The question of . . . qualification to speak as an expert lies largely in the discretion of the trial court whose judgment will not be reversed unless it clearly appears that the witness is not qualified." *State v. Brady,* 104 W. Va. 523, 533, 140 S.E. 546, 550 (1927). In the present case, respondents' expert witness was accepted as an expert without any objection from petitioner. The only challenge to the expert's trial testimony occurred before he took the stand, when petitioner objected to the expert testifying to Mr. Gilbert's mental state, or lack of attention, and any opinions based upon the Pennsylvania Driver's License Manual. Respondent offered no testimony on any of these points. Instead, petitioner seems to complain now that respondents' expert rejected Mr. Conrad's and Mr. Mimms' time estimate of three to four seconds for Mr. Mimms to inform Mr. Conrad of the occupant in the disabled vehicle and for Mr. Conrad to apply the brakes. However, respondents' expert explained that, based on his training and experience, and the testimony as to the speed and distance traveled, he rejected the time estimate because it was not physically possible. Importantly, petitioner cross-examined respondents' expert on his conclusions and put before the jury the same arguments he raises in this assignment of error. Accordingly, we find no error.

Third, petitioner argues that the circuit court erred in denying his motion in limine to preclude respondent's expert from testifying on the basis that respondents failed to timely

disclose their expert. Petitioner states that respondents failed to disclose any expert witness by the first deadline of December 31, 2013. Petitioner states further that after Mr. Conrad and Mr. Mimms failed to appear for their depositions, the circuit court entered a new scheduling order that required expert disclosures by October 30, 2014. Petitioner states that discovery closed on November 15, 2014, without respondents disclosing their expert.

Petitioner states that respondent finally disclosed their expert three days after discovery closed, but included no reports; just his name and resume. Petitioner filed a motion on November 25, 2014 to preclude the expert from testifying because of the late disclosure. The court denied the motion, but required the expert's deposition be held in Morgantown, near the office of petitioner's counsel. Respondents filed their expert's reports on December 29, 2014, and the parties deposed the expert a month later. The case went to trial eleven days after the deposition. Petitioner argues that the late disclosure and deposition deprived petitioner's expert the ability to adequately respond at trial to respondent's expert.

Upon our review, respondents' late expert witness disclosure did not warrant the circuit court granting petitioner's motion in limine to preclude the expert from testifying. We recently held that

> [f]actors that may assist a court in deciding whether to permit late supplemental expert witness disclosure include: (1) the explanation for making the supplemental disclosure at the time it was made; (2) the importance of the supplemental information to the proposed testimony of the expert, and the expert's importance to the litigation; (3) potential prejudice to an opposing party; and (4) the availability of a continuance to mitigate any prejudice.

Syl. Pt. 2, *State ex rel. Tallman v. Tucker*, 234 W. Va. 713, 769 S.E.2d 502 (2015).

The record demonstrates that the circuit court considered these factors when ruling on respondents' motion to file the expert disclosure. Additionally, petitioner was in receipt of respondents' expert's full report over a month before the trial, and took the expert's deposition almost two weeks before trial. Aside from a conclusory assertion that his expert was not prepared to rebut the report, petitioner fails to demonstrate such prejudice that warrants a finding of an abuse of discretion by the circuit court with respect to its handling of respondents' expert witness disclosure.

Petitioner's fourth assignment of error challenges two jury instructions, which petitioner argues created higher standards of care on petitioner than on respondents in regard to comparative negligence. The first allegedly erroneous instruction stated, generally, that Mr. Gilbert had a duty to not only look, but to see what reasonably could be seen on the roadway and to take reasonably prudent action to avoid danger. The instruction also stated that if Mr. Gilbert failed to keep a proper lookout, the jury could assess such negligence on the verdict form. The second challenged instruction stated that if the jury found that Mr. Gilbert was operating his vehicle at a greater speed than was reasonable or prudent given the adverse weather conditions, the jury shall find him negligent. Petitioner challenges the two instructions inasmuch as they

referenced only to Mr. Gilbert, without stating that Mr. Conrad was subject to the same standards of care.

In syllabus point four of *State v. Guthrie,* 194 W. Va. 657, 461 S.E.2d 163 (1995), we held as follows:

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

In the present case, petitioner claims that the instructions were erroneous because they mention Mr. Gilbert by name, and thus, were incorrect statements of the law. What petitioner fails to mention, however, is that the circuit court also gave two nearly identical instructions, proposed by petitioner, which clearly spoke to all drivers. As respondents correctly argue, the giving of these additional instructions that were free of reference to any specific party corrected any alleged prejudice that could have resulted if only the challenged instructions had been given. Accordingly, when reviewed as a whole, the instructions given were a correct statement of the law. *See Guthrie.* We find no abuse of discretion by the circuit court with respect to its jury instructions.

In his fifth assignment of error, petitioner argues that the jury's verdict was without sufficient basis in fact, plainly wrong, and contrary to the weight of the evidence. Petitioner argues that the exact location of the collision relative to the right lane of the interstate and Mr. Conrad's method of braking were disputed. He adds that the primary evidence that Mr. Conrad acted with due care came from respondents' expert, and should be rejected as unreliable. Petitioner also notes that Mr. Conrad admitted that he did not look in his rear view mirror until after Mr. Gilbert struck him from behind, and no evidence was introduced as to Mr. Gilbert's speed or his distance behind Mr. Conrad. Petitioner concludes that the accident would not have happened if Mr. Conrad had (1) braked gently, or (2) maintained his speed until completely on the berm and braked on the berm.

In support of his argument, petitioner recounts the trial testimony as he believes should have been viewed by the jury. However, petitioner's theory of the case was presented to the jury, and the jury rejected it. Additionally, the jury heard the unequivocal testimony of Mr. Conrad and Mr. Mimms that, at no point, did Mr. Conrad slam on his brakes prior to the collision. "It is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact when the testimony is conflicting." Syl. Pt. 3, *Long,* 158 W. Va. at 741, 214 S.E.2d at 837. The jury heard from eyewitnesses and two experts, whose opinions conflicted. As we determined in our discussion of petitioner's first and second assignments of error, the jury resolved these

7

conflicts in respondents' favor and we decline to disturb the jury's verdict based on petitioner's contrary view of the evidence. *See* Syl. Pt. 5, *Orr.*

In petitioner's final assignment of error, he merely rehashes his previous arguments to conclude that the circuit court abused its discretion in denying his motion to set aside the verdict and grant a new trial. For the reasons already discussed and decided above, we find no error in the circuit court's denial of petitioner's motion.

For the foregoing reasons, we affirm the Circuit Court of Kanawha County's "Order Denying Plaintiff's Motion to Set Aside Verdict and For a New Trial" entered on September 14, 2015.

Affirmed.

**ISSUED:** November 10, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Brent D. Benjamin
Justice Allen H. Loughry II


**DISSENTING:**

Justice Robin Jean Davis
Justice Margaret L. Workman

8